A07A0914. ZITRIN et al. v. GEORGIA COMPOSITE STATE BOARD OF MEDICAL EXAMINERS et al.

(653 SE2d 758)

MILLER, Judge.

Appellants Arthur Zitrin, Daniel Blumenthal, Alfred Freedman, Jonathan Groner, Michael Radelet, Kelly Thrasher, and Jerome Walker (collectively "Zitrin") filed the underlying action against the Georgia Composite State Board of Medical Examiners and its Executive Director, Lasharn Hughes (collectively "the Board"), after the Board refused to open a disciplinary investigation of doctors who participated in executions by lethal injection. The trial court dismissed the complaint for failure to state a claim upon which relief could be granted. Zitrin then filed this appeal,[1] and the Board moved to dismiss the same, citing Zitrin's failure to file an application therefor.

We find that this appeal involves a claim for relief under Georgia's Declaratory Judgment Act (OCGA § 9-4-2) that is independent of any claim asserted under the Georgia Administrative Procedure Act ("APA") (OCGA § 50-13-1 et seq.). The claim for declaratory relief is directly appealable and, under OCGA § 5-6-34 (d), Zitrin was allowed to include his claim under the APA in this appeal. Accordingly, this appeal is not subject to the application process mandated for discretionary appeals, and the Board's motion to dismiss the same is denied. We further find, however, that Zitrin lacked standing to pursue the declaratory relief sought or to bring a claim under the APA, and we therefore affirm the trial court's order dismissing the action on those grounds.

The issues in this appeal represent questions of law, which we review de novo, applying the "plain legal error" standard of review. *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000).

---

[1] Zitrin originally appealed the order of dismissal to the Supreme Court of Georgia on the grounds that the case involved issues of equity. The Supreme Court transferred the appeal to this Court, citing the trial court's finding that Zitrin sought neither an injunction nor mandamus.

Here, the record shows that pursuant to OCGA § 43-34-37 (d),[2] Zitrin filed a request for investigation with the Board, seeking an "investigation into the activities of all physicians who may have engaged in prohibited medical practices during the course of any executions by lethal injection in the State of Georgia." The request alleged that such physicians "are subject to disciplinary action under OCGA § 43-34-37 (a) (7) (unprofessional or unethical conduct or practice) and OCGA § 43-34-37 (a) (10) (violation of a law, rule or regulation of the practice of medicine)," because their conduct violated the Hippocratic Oath and the ethical standards of the American Medical Association ("AMA").

On June 22, 2005 the Board sent a response refusing to open an investigation. On July 5, 2005, Zitrin sent the Board notice, pursuant to the APA, of his intent to appeal. On July 22, 2005, Zitrin filed a complaint in the Superior Court of Fulton County seeking: (1) a declaratory judgment that physician participation in executions is prohibited by Georgia law; (2) a reversal of the Board's decision not to conduct an investigation; and (3) entry of an order requiring the Board to conduct such an investigation. The Board filed a motion to dismiss for failure to state a claim upon which relief could be granted, which the trial court granted. This appeal, and the Board's motion to dismiss the same, followed.

1. The initial question presented is whether this Court has jurisdiction over Zitrin's appeal. The Board argues that because the underlying subject matter involves the decision of a state administrative agency, Zitrin was required to file an application for appeal under OCGA § 5-6-35 (a) (1).[3] We disagree.

The cases cited by the State in support of its motion to dismiss hold that if a party, instead of directly appealing the decision of a state agency, attempts to use mandamus or the Declaratory Judgment Act as a means of seeking a review of the agency decision, then an appeal from the trial court's grant or denial of the requested relief falls within the ambit of OCGA § 5-6-35. See *Ferguson v. Composite State Bd. of Med. Examiners*, 275 Ga. 255 (564 SE2d 715) (2002) (plaintiff sought mandamus relief from a decision of the Composite State Board of Medical Examiners denying reinstatement of his medical license); *Rebich v. Miles*, 264 Ga. 467 (448 SE2d 192) (1994) (after Department of Public Safety denied plaintiff's request for a hearing on the

---

[2] OCGA § 43-34-37 deals with the licensing and discipline of physicians by the Board. Subsection (d) thereof grants the Executive Director of the Board the power to authorize and conduct any investigation that she, the Board, or "any district attorney may deem necessary or advisable in the enforcement of this chapter."

[3] OCGA § 5-6-35 (a) (1) requires an application for an appeal taken from a decision of the superior court "reviewing decisions of . . . state and local administrative agencies."

suspension of his driver's license as untimely, plaintiff sought writ of mandamus compelling Department to hold a hearing); *Cox v. Academy of Lithonia*, 280 Ga. App. 626 (634 SE2d 778) (2006) (appeal from declaratory judgment overturning an administrative decision of a county board of education); *Best Tobacco, Inc. v. Dept. of Revenue*, 269 Ga. App. 484 (604 SE2d 578) (2004) (plaintiff sought declaratory and injunctive relief from the Department's refusal to refund taxes and release confiscated property). Given that Zitrin's complaint asserted a claim for declaratory relief that was independent of the Board's decision he sought to have reviewed under the APA, these cases are not controlling. Rather, the question of appellate jurisdiction under these circumstances is controlled by this Court's opinion in *Smith v. Dept. of Human Resources*, 214 Ga. App. 508 (448 SE2d 372) (1994).

In *Smith*, a state employee appealed the decision of the State Personnel Board upholding her reassignment from a position in Hall County to one in Barrow County. The employee also sought a declaratory judgment that she had been involuntarily separated from her employment under OCGA § 47-2-123 (h) (2) (B). The Department of Human Resources moved to dismiss the appeal, citing the employee's failure to file an application for appeal under OCGA § 5-6-35 (a) (1). *Smith*, supra, 214 Ga. App. at 509.

In refusing to dismiss the appeal, this Court applied the then-recent decision in *Martin v. Williams*, 263 Ga. 707 (438 SE2d 353) (1994), which held that an order that is not directly appealable by itself may be appealed in conjunction with a separate, directly appealable order. Based on this ruling, the Court concluded that Smith could "appeal the denial of her request for a declaratory judgment and, under OCGA § 5-6-34 (d), add to that appeal issues relating to other rulings which may affect the proceedings below without regard to whether they are appealable standing alone." *Smith*, supra, 214 Ga. App. at 509 (2).

Under *Martin* and *Smith*, the crucial question with respect to appellate jurisdiction in this case is whether Zitrin's request for declaratory relief stands independently of his challenge to the Board's decision — i.e., whether that request could have been granted or denied without affirming or reversing the Board's decision. We find that Zitrin's claim seeking a declaratory judgment, like the claim for declaratory relief sought in *Smith*, does have such "independent standing."

Zitrin's complaint alleged two separate causes of action. One claim, brought under the APA, sought a review of the Board's refusal

to open a disciplinary investigation against certain, identified physicians who had allegedly participated in executions by lethal injection in Georgia.[4] The other claim, brought under Georgia's Declaratory Judgment Act, sought a declaration that any physician participation in executions is prohibited by Georgia law. The request for a declaratory judgment could have been brought even had Zitrin not filed the ethical complaint at issue. Similarly, that claim could have been pursued even if Zitrin declined to seek a review of the Board's refusal to act on the ethical complaint. Finally, a decision on the request for declaratory relief would not require the Board to open the disciplinary proceeding requested by Zitrin, nor would it constitute an affirmance of the Board's refusal to do so. Given these circumstances, Zitrin could appeal the denial of his request for a declaratory judgment and, under OCGA § 5-6-34 (d), add to that appeal his claim under the APA.

2. We next turn to Zitrin's argument that the trial court erred in finding that he lacked standing to pursue the declaratory relief sought.

Under Georgia law, a declaratory judgment is not available "for any and all justiciable controversies." *Patterson v. State of Ga.*, 242 Ga. App. 131, 132 (528 SE2d 884) (2000). Rather, to have standing to request such relief,

> a plaintiff must demonstrate facts or circumstances whereby he is in a position of uncertainty or insecurity because of a dispute and having to take some future action which is properly incident to [his] alleged right, and which future action without direction from the court might reasonably jeopardize his interest.

(Citations and punctuation omitted.) Id. "Where the party seeking declaratory judgment does not show it is in a position of uncertainty as to an alleged right, dismissal of the declaratory judgment action is proper; otherwise, the trial court will be issuing an advisory opinion." (Citations omitted.) *Baker v. City of Marietta*, 271 Ga. 210, 214 (1) (518 SE2d 879) (1999). See also *Adams v. Atlanta Cas. Co.*, 225 Ga. App. 482, 484 (1) (484 SE2d 302) (1997) ("When a declaratory judgment cannot guide and protect the petitioner regarding a future act, no declaratory judgment is authorized. [Cit.]").

---

[4] Notably, the Board sought to have this claim dismissed in the trial court, arguing that there had been no action by the Board – i.e., that a refusal to open an investigation does not constitute "action," as that term is used in the APA.

Zitrin and his colleagues argue that declaratory relief is necessary in this case because "clarification of their and their fellow professionals' statutory and professional responsibilities" is needed given that "violations of those duties and responsibilities may result in disciplinary sanctions." In essence, Zitrin is asserting that he and his colleagues are in a position of uncertainty because they could be subject to disciplinary proceedings should they ever participate in executions in Georgia. The record before us, however, not only fails to support this argument, it actually undermines it.

Neither Zitrin nor any of the other five doctors[5] named as plaintiffs below have participated in executions and none has been threatened with discipline for such participation. Furthermore, given their belief that both the Hippocratic Oath and AMA ethical standards forbid such participation, it is clear that none of them ever plans to take part in an execution. Additionally, only three of these doctors actually reside and practice medicine in Georgia; the remainder, therefore, would never be subject to sanction by the Board. Finally, the Board's decision (and its position of record in this action) guarantees that no physician will be subject to disciplinary proceedings as a result of his or her participation in an execution. In light of these facts, we cannot find that Zitrin and his colleagues are seeking a declaratory judgment to guide them with respect to any future action, and the trial court properly dismissed this claim for lack of standing. *Baker*, supra, 271 Ga. at 214.

3. In addition to seeking a declaratory judgment, Zitrin also asserted a claim pursuant to the APA, which provides that "[a]ny person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." OCGA § 50-13-19 (a). On appeal, Zitrin challenges the trial court's holding that he lacked standing to seek judicial review of the Board's decision not to open a disciplinary investigation.

In the context of the APA, a person is "aggrieved" where he can show "an interest in the agency decision that has been specially and adversely [impacted] thereby." (Citation and punctuation omitted.) *Bd. of Natural Resources v. Ga. Emission Testing Co.*, 249 Ga. App. 817, 819 (1) (548 SE2d 141) (2001). In other words, such an individual must demonstrate special damage suffered as a result of the decision appealed from, rather than some damage common to all those similarly situated. *Ga. Power Co. v. Campaign for a Prosperous Ga.*, 255 Ga. 253, 258 (2) (336 SE2d 790) (1985).

---

[5] We note that one of the seven named plaintiffs below is not a physician, but is a sociologist who has studied and written on executions by lethal injection.

Zitrin offers two arguments to show that he is an aggrieved party. He first cites *Thebaut v. Ga. Bd. of Dentistry*, 235 Ga. App. 194 (509 SE2d 125) (1998), in which this Court held that a party is aggrieved within the meaning of the APA where the challenged decision has resulted in a "chilling effect on the [party's] approach to [the] practice [of his profession]." Id. at 197 (2). Based on *Thebaut*, Zitrin argues that those parties who are Georgia physicians remain "unsure" as to whether AMA ethical standards[6] apply to them and that this uncertainty has had a "chilling effect" on their "approach" to the practice of medicine. Zitrin fails to explain, however, how such uncertainty has chilled or otherwise affected the way in which he practices medicine.

Zitrin next asserts, correctly, that where the decision of an administrative agency threatens a party with economic injury, that party is aggrieved. See *Bd. of Natural Resources*, supra, 249 Ga. App. at 819 (1). He then argues that the uncertainty regarding the applicability of the AMA ethical standards undermines his profession, thereby threatening him with economic injury. Again, however, Zitrin fails to identify this threatened economic injury or to explain how the Board's refusal to act in this case created that threat.

Finally, even assuming that Zitrin could show that the Board's refusal to act either adversely impacted his practice of medicine or threatened him with an economic injury, he has failed to show that any such injuries are special to him, rather than common to all those physicians practicing medicine in Georgia. The trial court, therefore, properly found that Zitrin was not an aggrieved party under the APA and that, as a result, he lacked standing to challenge the Board's decision. *Campaign for a Prosperous Ga.*, supra, 255 Ga. at 258 (2).

For the reasons set forth above, we deny the Board's motion to dismiss this appeal but affirm the trial court's order dismissing Zitrin's complaint for failure to state a claim on which relief can be granted.

*Judgment affirmed. Barnes, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 18, 2007 —
RECONSIDERATION DENIED NOVEMBER 8, 2007 —

*Stuckey & Manheimer, Hollie G. Manheimer, Gerald R. Weber, Jr.,* for appellants.

---

[6] Article E-2.06 of the AMA's Code of Ethics provides that physicians "should not [participate] in a state execution."

*Thurbert E. Baker, Attorney General, Janet B. Wray, Wylencia H. Monroe, Assistant Attorneys General,* for appellees.